UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRETT C., individually and on behalf of B.C., a minor,

CIVIL ACTION

VERSUS

BLUECROSS BLUESHIELD OF LOUISIANA, ET AL.

NO. 21-00589-BAJ-RLB

RULING AND ORDER

Before the Court is Plaintiff's **Motion for Summary Judgment (Doc. 107, "Plaintiff's Motion")**. Defendants Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue of Shield of Louisiana ("BCBSLA") and United Healthcare Insurance Company and United Behavioral Health (collectively, "United") oppose the Motion. (Doc. 122; Doc. 123-1). In its Response in Opposition (Doc. 123-1), Defendants United also requested a Judgment on Administrative Record, which the court construes as a competing motion for judgment brought pursuant to Federal Rule of Civil Procedure 52. Plaintiff filed Replies to both Responses in Opposition. (Doc. 128; Doc. 129). Defendants United filed supplemental briefing (Doc. 131-1).

For the following reasons, Plaintiff's Motion will be **DENIED**, and judgment shall be entered in favor of Defendants.

## I. FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Statement of Material Facts (Doc. 110-3), Defendant BCBSLA's Opposition to Plaintiff's Statement of Material Facts (Doc. 121), and Defendant United's Responses to Plaintiff's Statement of Material Facts and Statement of Additional Material Facts (Doc. 123-2). Plaintiff Brett C. and his son B.C. had health insurance coverage through a fully-insured employee welfare benefits plan ("the Plan") covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). (Doc. 110-3 ¶ 4). BCBSLA was the relevant insurer, claims administrator, and fiduciary for Plaintiff's Plan during the treatment at issue in this case taking place prior to February 1, 2021. (*Id.* ¶ 2). After that date, United became the relevant insurer, claims administrator, and fiduciary for Plaintiff's Plan. (*Id.* ¶ 3).

B.C. suffers from Asperger's Syndrome, ADHD, and dysgraphia. He was developmentally delayed and frequently had tantrums and outbursts. This led him to begin attending therapy sessions, which was somewhat effective but did not fully resolve his symptoms. Once he reached the eighth grade, B.C.'s school asked him to leave and suggested that he attend an outside therapeutic facility that could more fully meet his needs. (Doc. 110-3 ¶ 4).

### a. Care at Boulder Creek Academy

Between March 8, 2019, and April 16, 2019, B.C. received medical care and treatment at Boulder Creek Academy ("BCA"). (Doc. 121 at 7-8). Plaintiff submitted claims for the services rendered at BCA in March 2021. (Doc. 91-1 at 433). BCBSLA

2

rejected Plaintiff's claims for services provided at BCA because of "untimely filing". (Doc. 121 at 7-8). Plaintiff submitted an internal appeal with BCBSLA in May 2021, which was denied for the same reason on June 17, 2021. (*Id.*; Doc. 91-1 at 458).

### b. Care at Aspiro Wilderness Adventure Therapy

Between April 18, 2019 and June 25, 2019, B.C. received care at Aspiro Wilderness Adventure Therapy ("Aspiro"). (Doc. 110-3 at 6-8). Defendant BCBSLA disputes the characterization of care received by B.C. at Aspiro, defining it as "outdoor youth treatment" rather than "medical treatment". (Doc. 121 ¶ 5; Doc. 110-3 ¶ 5). On August 10, 2021, BCBSLA rejected Plaintiff's claims for services provided at Aspiro citing "Provider Type not eligible." (Doc. 121 ¶ 28). Plaintiff appealed this benefits determination in an appeal to BCBSLA, and on July 13, 2022, the denial of coverage was upheld. In its denial of the appeal, BCBSLA explained that Aspiro had submitted a claim for "Psychiatric Residential" treatment but Plaintiff's benefits required that service "to be provided by a facility that is licensed to provide this service," and that "Aspiro Adventure is not licensed for Residential treatment." (Doc. 121 ¶ 34).

### c. Care at Elevations RTC

Between June 25, 2019 and November 19, 2019, B.C. received care at Elevations RTC ("Elevations"). (Doc. 110-3 at 8-10). In July 2019, BCBSLA denied Plaintiff's claims for services provided at Elevations because it had determined that the treatment provided was not medically necessary. (Doc. 110-3 ¶ 37). Plaintiff appealed this determination in December 2019, but the claim was allegedly

3

misplaced by BCBSLA and not addressed until February 2021. (Doc. 121 at 12-13). At that time, BCBSLA upheld the denial of these claims for lack of medical necessity. (Doc. 121 ¶ 42). The denial letter gave the following reasoning for its determination:

> Elevations RTC asked for approval to provide care for you. Your care team provided us with information. You no longer required this level of care. You were taking your medications. You reported that your medications were working well for you. You denied side effects. You were free of thoughts to harm anyone. Your mood had improved. You could have been treated at a lower level of care. (Doc. 110-3 ¶ 43).

### d. Care at Heritage School

Between November 20, 2019 and June 25, 2021, B.C. received care at Heritage School ("Heritage"). (Doc. 110-3 at 10-15). On March 9, 2020, BCBSLA denied these claims for the period during which it was the insurer. (Doc. 121 ¶ 46). The Parties dispute the characterization of the denial letter but agree that it included discussion of medical necessity under the Plan. (Doc. 121 ¶ 46; Doc. 110-3 ¶ 46). Plaintiff appealed this denial on February 8, 2021. The Parties dispute the characterization of the contents of the appeal letter. Plaintiff contends that he included letters of medical necessity with the appeal, and a review of the administrative record shows that he did include some language allegedly from physicians who at some point in time were involved with B.C.'s care, though the time period during which they were involved in his care, as well as the time period these "letters of medical necessity" were written and submitted, is of material dispute. (Doc. 110-3 at 11; Doc. 91-2 at 1666-68; Doc. 121 at 17; Doc 122 at 19 n.8).

4

After United became the insurer for the Plan, it denied payment for B.C.'s treatment at Heritage between February 1, 2021, and June 25, 2021, through an explanation of benefits that explained that the provider had not submitted required information. (Doc. 110-3 ¶ 7; Doc. 123-2 ¶ 55). United alleges that its original benefits determination was issued after several unsuccessful attempts at eliciting necessary information from Heritage to process the claim. (Doc. 123-2 at 28-29). On November 16, 2021, Plaintiff sent a letter to United regarding this explanation of benefits, but the parties' disagreement over the characterization of this letter is at the heart of the dispute. Plaintiff contends it was a "request for a retrospective review". (Doc. 110-3 ¶ 54). United asserts that it constituted an appeal as defined by the Plan. (Doc. 123-2 ¶ 55). United responded to the letter on December 22, 2021, upholding the denial of the claim because the facility "is classified as an 'Authorization Unavailable' facility". It also concluded that "the expected service components consistent with the guideline [United's third-party claims reviewer] uses for Mental Health Residential Treatment were not present," and citing to the section of the guidelines referenced. (Doc. 110-3 ¶ 57; Doc. 90 at 334). The denial letter also explicitly noted that "[t]his is the Final Adverse Determination of your internal appeal. All internal appeals through [United] have been exhausted." (Doc. 110-3 ¶ 57). On May 9, 2022, Plaintiff submitted another letter to United. (Doc. 110-3 ¶ 58). Again, the Parties disagree regarding the characterization of this letter. Plaintiff contends this was an appeal. (*Id.*) United denies that it was an appeal because "Plaintiff already had exhausted all

5

internal appeals available under the Plan." (doc. 123-2 ¶ 58). United did not respond to the letter. (Doc. 110-3 ¶ 67; Doc. 123-2 ¶ 67).

## II. PROCEDURAL BACKGROUND

Plaintiff filed suit in the U.S. District Court for the District of Utah pursuing claims for recovery of benefits denied under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)); or, alternatively, equitable relief under ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)). (Doc. 2; Doc. 36 ¶¶ 68-95). Plaintiff asserts federal jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §1132(e)(1). (Doc. 2). Defendant BCBSLA moved for transfer of venue to this Court under 28 U.S.C. § 1404(a), which was subsequently granted. (Doc. 13; Doc. 14). Defendants moved to dismiss Plaintiff's claim for equitable relief under Federal Rules of Civil Procedure 12(b)(6), which the Court denied. (Doc. 56; Doc. 60; Doc. 72). Nonetheless, Plaintiff now pursues only the claim for recovery of benefits under ERISA § 502(a)(1)(B) and does not pursue the second cause of action seeking equitable relief. (Doc. 110-1). In accordance with Federal Rule of Civil Procedure 16(b), the Court issued a Case Order establishing deadlines for the Parties to file motions for judgment based on the administrative record under Federal Rule of Civil Procedure 52. (Doc. 77). Plaintiff instead moves the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 110-1).

## III. LEGAL STANDARD

### a. Summary Judgment Standard

Plaintiff seeks summary judgment under Federal Rule of Civil Procedure

56(a), which provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the Court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hou. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). The Court, however, only "resolve[s] factual controversies in favor of the nonmoving party ... only where there is an *actual controversy*, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal citation omitted) (emphasis added).

"Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the nonmovant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (internal citation omitted). If the nonmoving party fails to provide adequate support for their claims after being provided adequate time to conduct discovery, "Rule 56(c) *mandates* the entry of summary judgment." *Celotex Corp v. Catrett*, 477 U.S. 317, 322–323 (1986). The Court is prohibited, in the absence of evidence supporting each element of the claims alleged, from "assum[ing] that the nonmoving party could or would prove the necessary facts" at trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Defendants United request judgment on the pleadings pursuant to Federal Rule of Civil Procedure 52. (Doc. 26). Rule 52 requires the Court to "find the facts specifically and state its conclusions of law separately." Fed. R. Civ. P. 52. Courts need not provide findings of fact on "all factual questions that arise in the case," *Koenig v. Aetna Life Ins. Co.*, No. 4:13-CV-0359, 2015 WL 6554347, at *3 (S.D. Tex. Oct. 29, 2015), nor must courts provide "punctilious detail nor slavish tracing of the claims issue by issue and witness by witness." *Cent. Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (quoting *Burma Navigation Corp. v. Reliant Seahorse M/V*, 99 F.3d 652, 656 (5th Cir. 1996)). Rather, Rule 52 is satisfied when the findings "present the reviewer with 'a clear understanding of the basis for the decision.'" *Batchelor v. Life Ins. Co. of N. Am.*, 504 F. Supp. 3d 607, 610 (S.D. Tex. 2020) (quoting *Cent. Marine Inc. v. U.S.*, 153 F.3d 255, 231 (5th Cir. 1998)). "The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision." Fed. R. Civ. P. 52. Here, the Court's findings of fact and conclusions of law will be provided in this Ruling and Order and will be based solely on the administrative record and the parties' respective briefs.

Because the only relevant facts in this case are found in the administrative record, the Court's ruling will satisfy both the Rule 56 standard for summary judgment and Rule 52 standard for judgment on the administrative record.

**b. ERISA**

A person denied benefits under an ERISA plan has the right to challenge that denial in federal court. *Metro. Life Ins. Co v. Glenn.*, 554 U.S. 105, 108, 128 S.Ct.

2343, 2346 (2008). The standard of review for denial of benefits made by an ERISA plan administrator is *de novo* "unless the benefit plan gives the administrator fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57. The Parties do not dispute that the Plan vested Defendant BCBSLA with discretionary authority to determine eligibility for benefits and to construe and interpret the terms of the Plan. (Doc. 122 at 5-7; Doc 110-2 at 15). The Court therefore reviews Defendant BCBSLA's decision to deny Plaintiff's benefits coverage on an abuse of discretion standard. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 314 (5th Cir. 2007).

Under an abuse of discretion standard, a plan administrator's decision will only be upset if the administrator acted in an "arbitrary or capricious manner in denying benefits." *Id.* (citing *Matassarin v. Lynch*, 174 F.3d 549, 563 (5th Cir. 1999)). A decision is arbitrary when there is no "rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)). Plaintiffs carry the burden of proving an abuse of discretion. *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 813 (5th Cir. 2019).

In reviewing a decision to deny or terminate benefits, courts are limited to the administrative record and "may inquire only 'whether the record adequately supports the administrator's decision.'" *Id.* (quoting *Gooden v. Provident Life & Acc. Ins. Co.*,

9

250 F.3d 329, 333 (5th Cir. 2001)). The administrative record has been provided to the Court. (Docs. 90, 91).

Adequate support is found when an administrator's decision is supported by "substantial evidence," which is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)). Finally, a court's review of a benefits decision need only conclude "that the administrator's decision fall[s] somewhere on a continuum of reasonableness – even if on the low end." *Corry*, 499 F.3d at 398 (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)).

However, unlike BCBSLA, United asserts that a *de novo* standard applies to Plaintiff's claims against them without further elucidation. (Doc. 123-1 at 7). The Court accepts this standard because it is the baseline for ERISA benefits review except in narrow circumstances. *Firestone Tire & Rubber Co.*, 489 U.S. at 115, 109 S.Ct. 948. "De novo review requires the court to apply the same standard as the plan administrator in deciding whether the benefits were owed under the plan's terms." *Krishna v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 676 F. Supp. 3d 494, 502 (S.D. Tex. 2023), *aff'd sub nom. Krishna v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, No. 23-20289, 2024 WL 1049474 (5th Cir. Mar. 11, 2024).

The Court therefore reviews Defendant BCBSLA's decision to deny Plaintiff's claims under an abuse of discretion standard and Defendant United's actions under

a *de novo* standard. Under either standard of review, the Court is limited to the administrative record in reaching its decision, and under either standard, the Court reaches the same result. *See Katherine P. v. Humana Health Plan, Inc.,* 959 F.3d 206, 207-08 (5th Cir. 2020); *see also Jenkins,* 487 F.3d at 314.

## IV. DISCUSSION

### a. Claims against BCBSLA

As discussed, the claims against BCBSLA will be reviewed under an abuse of discretion standard. Plaintiff asserts an abuse of discretion due to substantive or procedural deficiencies with BCBSLA's benefits determinations for care provided at BCA, Aspiro, Elevations and Heritage. The Court will address claims for each facility in turn.

#### i. Denial of benefits for care at BCA

Plaintiffs object to BCBSLA's denial of benefits for care at BCA despite acknowledging that the appeal was untimely filed 10 months after the 15-month deadline to submit. (Doc. 110-2 at 18). Plaintiff attempts to invoke the "notice prejudice rule" to make up for his lack of timeliness, but this argument is without merit. The notice prejudice rule does not apply here because it is clear that a condition precedent exists in the Plan that mandates adherence to the 15-month appeal deadline. *Peavey Co. v. M/V ANPA,* 971 F.2d 1168, 1173 (5th Cir. 1992) (holding that the notice prejudice rule in Louisiana applies only where timely notice is not an express condition precedent). The relevant Plan language provides that "in no event may any Claim be filed later than fifteen months from the date services were rendered." (Doc. 91-1 at 89). Plaintiffs argue that these terms do not create an express

11

condition precedent. (Doc. 128 at 3). However, "[t]he term 'express' connotes that the policy must clearly and explicitly connect compliance to coverage." *Morris v. State Farm Fire & Cas. Co.,* 740 F. Supp. 3d 491, 502 (W.D. La. 2024). Here, BCBSLA provides evidence of such a connection in the unambiguous written policy that prohibits the filing of claims outside of the 15-month period. (Doc. 91-1 at 89). Moreover, Plaintiff has failed to show that BCBSLA's implementation of the 15-month time limit was arbitrary or capricious and thus was an abuse of discretion to warrant reversal of its benefits determination to the claims filed by Plaintiff for care received at BCA.

### ii. Denial of benefits for care at Aspiro

BCBSLA denied Plaintiff's claims for care received at Aspiro because it did "not qualify as a covered provider under the Plan". (Doc. 122 at 12). It further explained in its July 13, 2022, letter denying Plaintiff's appeal that the facility was not licensed to provide "Psychiatric Residential" services as billed. (Doc. 110-2 at 7). Plaintiff disagrees with BCBSLA's interpretation of the Plan language as applied to Aspiro. Specifically, Plaintiff alleges that Aspiro met the listed qualifications for a "provider" and "Residential Treatment Center" because "there is no Plan requirement for licensure of residential treatment facilities." (Doc. 128 at 4). BCBSLA counters that the Plan language explicitly requires providers to be "licensed where required, performing within the scope of their license, and approved by the company," citing to the definition for "Provider" in Article II of the Plan. (Doc. 91-1 at 26).

In reviewing ERISA cases, the Court must determine whether a plan administrator's interpretation was legally correct based on three factors, the most important of which is whether the interpretation is consistent with a fair reading of the plan. *Stone v. UNOCAL Termination Allowance Plan,* 570 F.3d 252, 258-60 (5th Cir. 2009). A Plan should be interpreted "by the plain meaning of the plan language" and in the "ordinary and popular sense as . . . a person of average intelligence and experience" would. *Crowell v. Shell Oil Co.,* 541 F.3d 295, 313 (5th Cir. 2008).

Plaintiff argues that the absence of the terms "licensed where required" directly underneath the plan definition for Residential Treatment Center means that no license is required. (Doc. 128 at 4). However, when read in context, it is clear from the broader Plan provision regarding Providers generally that a licensing requirement applies to all facilities and providers. (Doc. 91-1 at 26). Plaintiff points to a definition for "skilled nursing facility or unit" that, like the definition for Residential Treatment Center, does not include an explicit licensing requirement in the definition and contrasts this to the Plan's definition for "Hospital", which does include such an explicit reference to licensing. (Doc. 128 at 3-4). However, licensing is not explicitly mentioned in many other definitions in the plan glossary, including for ambulatory surgical centers and urgent care centers, but there could be no serious argument that the Plan's broader licensing requirement for providers does not also apply to these types of care providers. (Doc. 91-1, 17-28). BCBSLA's interpretation of its Plan language that eligible providers must be licensed and acting within the scope of their license is not only defensible but persuasive. It follows the plain meaning of

13

the plan language and is consistent with a fair reading of the Plan. BCBSLA's subsequent decision to deny Plaintiff's claims at Aspiro because of Aspiro's failure to meet the licensing requirements for the type of care it provided is thus not arbitrary and capricious nor an abuse of discretion.

### iii. Denial of Benefits for Care at Elevations

BCBSLA denied Plaintiff's claims for care provided at Elevations because it was deemed not medically necessary. (Doc. 91-1 at 1204). Plaintiff asserts that BCBSLA abused its discretion in denying these claims because BCBSLA "made conclusory findings" and "did not refer to any of the information or arguments [he] raised in his appeal nor did it refer to any specific medical records[.]" (Doc. 110-2 at 20). Plaintiff further alleges that BCBSLA withheld from the claimants their underlying rationale in reaching the conclusion that B.C.'s care was not medically necessary. (Doc. 128 at 5).

However, BCBSLA did provide a rationale. In both of its denial letters, BCBSLA stated "your care team reports your symptoms have improved, . . . you are getting along with staff and others. . . you are cooperative with treatment . . . you are able to attend to your daily self-care needs." (Doc. 91-1 at 1204). Importantly, this rationale was supported by conversations with and reports from B.C.'s current care team and BCBSLA's independent peer reviewers, as well as B.C.'s own self-reported symptoms. (Doc. 91-1 at 1010-1011, 1241, 1361).

Plaintiff's argument that BCBSLA's determination must be reversed because it did not respond to Plaintiff's alleged letters of medical necessity in its denial on

14

appeal is unpersuasive. Plaintiff speculates that BCBSLA's failure to specifically reference these letters means that they were not considered by BCBSLA in its final determination, but this is not supported. Plaintiff's letters are included in the administrative record provided by BCBSLA. Moreover, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965 (2003).

Plaintiff attempts to analogize his case to a recent 5th Circuit decision, *Dwyer v. United Healthcare Insurance Company,* 115 F.4th 640 (5th Cir. 2024), in which an insurer's benefits determination was reversed for, among other reasons, failure to engage in a "meaningful dialogue" under ERISA's full and fair review standard. (Doc. 110-2 at 20-21). However, the facts of that case differ from the case *sub judice.* Namely, in *Dwyer,* the Plan administrator's denial of benefits was directly contradicted by evidence in the administrative record that was available to the administrator at the time of the patient's treatment and associated benefits determination. 115 F.4th at 647-48. That is not the case here, where the Court instead finds *support* in the administrative record for BCBSLA's denial of benefits for Plaintiff's care at Elevations. (Doc. 122 at 17-18). Moreover, the *Dwyer* case applied a *de novo* standard of review, not an abuse of discretion standard, as the Court applies here. 115 F.4th at 646; *Firestone Tire & Rubber Co.,* 489 U.S. at 115, 109 S.Ct. 948.

Taking into account only what is provided in the administrative record, the Plaintiff has not met his burden to prove that BCBSLA abused its discretion in its determination that B.C.'s care at Elevations was not medically necessary.

### iv. Denial of Benefits for Care at Heritage

Plaintiff also takes issue with BCBSLA's denial of benefits at Heritage because "BCBSLA needed to communicate and explain which medical records it was relying on to reach those conclusions." Plaintiff cites no authority for this requirement, and the Court finds no such requirement in the case law or federal ERISA regulations. Rather, the relevant ERISA regulations require that an administrator must provide "[t]he specific reason or reasons for the adverse determination" and "the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503-1(g)(1)(i),(ii). Plaintiffs cite to *Dwyer* for a similar contention that BCBSLA was required to specifically reference medical records and the letters of medical necessity submitted by Plaintiff. 115 F.4th 630 (5th Cir. 2024); (Doc. 110-2 at 22). The Court disagrees. Rather, in *Dwyer*, the Fifth Circuit notes that "[i]n the specific case of health benefits denied on the basis of 'medical necessity,' a beneficiary is entitled to 'either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request." *Dwyer*, 115 F.4th at 649-50 (citing 29 C.F.R. § 2560.503-1(g)(1)(v)(B)). That Court found the defendant-insurer's denial of benefits insufficient in this regard because it did not offer an

16

explanation and did not mention the relevant plan provisions or how the insured's medical circumstances were evaluated under the plan. *Id.* at 650.

Here, Defendant BCBSLA provided such an explanation in its denial letters. It notified Plaintiff that the claim was denied because "care could be provided in a less intensive restrictive setting" and "did not meet medical necessity [criteria]". (Doc. 91-1 at 4303, 5189-5212). BCBSLA's letters also referred to the relevant plan provisions for determinations of medical necessity and to clinical information specific to the Plaintiff's medical circumstances that is supported in the record by conversations with B.C.'s providers at the time services were being rendered. (*Id.*) ("You did not require daily medication monitoring", "[y]ou were not described as being in a crisis.")) Further, both denial letters included a statement that an explanation of the clinical judgment for the determination will be provided free of charge upon request. (Doc. 91-2 at 1273, 2158). Plaintiff reiterates its argument that BCBSLA was required to respond to or reference the letters of medical necessity Plaintiff included in his appeal letter. (Doc. 128 at 7). For the same reasons discussed above regarding the care provided at Elevations, the Court disagrees and finds that BCBSLA did not abuse its discretion under ERISA's full and fair review standard in its denial for care provided at Heritage.

### b. Claims against United

Plaintiff's claims against United relate to its denial of benefits for care at Heritage and lack of response to Plaintiff's May 9, 2022, letter. The heart of the

dispute is whether this letter constitutes a valid appeal under the Plan terms. (Doc. 129 at 2; Doc. 123-1 at 7-8). The Court finds that it does not.

ERISA "requires only a single mandatory review." *DaCosta v. Prudential Ins. Co. of Am.*, No. 10 Civ. 720 (JS) (ARL), 2010 WL 4722393, at *5-6 (E.D.N.Y. Nov. 12, 2010) (citing 29 U.S.C. § 1133(2)). Regardless of what title Plaintiff gave to his November 2021 letter to United, it was a clear request for review of a post-service claim denial that fits the definition for an appeal under the Plan terms. (Doc. 90 at 50-51, 199, 372). Plaintiff's arguments that insured parties are entitled to a "retrospective review" is not supported by a reading of the Plan documents nor relevant law.

Plaintiff asserts that "ERISA . . . regulations require an insurer to provide any new rationale to the claimant prior to a final adverse decision," but he does not directly cite to any federal statute, regulation, or case law to support this contention. (Doc. 129 at 4). Plaintiff further asserts that "[u]nder ERISA's regulations, the family was entitled to submit a follow-up appeal." (*Id.*). The Court likewise does not find this argument supported by the law. Plaintiff argues that "an administrator may rely on new evidence or rationales to deny the claim so long as the claimant is given notice *and an opportunity to respond.*" (Doc. 129 at 5). However, the specific section of the ERISA regulations cited by the Plaintiff to support this contention applies only to plans and claims for disability benefits, not healthcare plans. 29 C.F.R. § 2560.503-1(h)(4)(i-ii). The relevance of Plaintiff's reference to ACA regulations in his reply brief are not entirely clear and regardless will not be considered at this point in the

18

litigation due to inadequate briefing. *See Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2009). Further, Plaintiff's contention that *Dwyer* mandates United's response to his May 9, 2022, letter is inaccurate. (Doc. 129 at 6-7). *Dwyer* involved a plan administrator ignoring a first request for appeal and then attempting to use post-hoc rationalizations to defend its benefits determinations. 115 F.4th at 645, 650. The instant facts differ notably in that United responded to Plaintiff's first appeal in sufficient detail as described in the administrative record. As noted, ERISA mandates only one level of internal appeal. 29 U.S.C. § 1133(2). The Court declines to review United's actions beyond the standards provided by those regulations. Thus, the Court finds that United's denial of Plaintiff's claim for care at Heritage did not violate ERISA.

### V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' **Motion For Summary Judgment (Doc. 107)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that **Defendants United Healthcare Insurance Company And United Behavioral Health's Motion For Leave To File Sur-Reply Brief In Opposition To Plaintiff's Motion For Judgment On Administrative Record (Doc. 131)** is **GRANTED**. The Court has considered Defendants' proposed sur-reply brief. The Clerk of Court shall enter Defendant's proposed sur-reply brief (Doc. 131-1) into the record under a separate docket entry.

IT IS FURTHER ORDERED that **Defendant BCBSLA's Opposition to Plaintiff's Motion for Summary Judgment (Doc. 122),** which the Court construes as a competing motion for judgment brought pursuant to Federal Rule of Civil Procedure 56, be and is hereby **GRANTED.**

IT IS FURTHER ORDERED that **Defendant United's Response In Opposition to Plaintiff's Motion and Request For Judgment on Administrative Record (Doc. 120),** which the Court construes as a competing motion for judgment brought pursuant to Federal Rule of Civil Procedure 56, be and is hereby **GRANTED.**

IT IS FURTHER ORDERED that Plaintiff's action be and is hereby **DISMISSED WITH PREJUDICE.**

Judgment shall be entered separately.

Baton Rouge, Louisiana, this 30th day of September, 2025

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**